Morrison, C. J.
This action was brought to recover damages sustained by the plaintiff, Mary E. Jamison, while a passenger on defendant’s road; and a trial having been had in the late district court of the Twentieth Judicial District, judgment passed in favor of the plaintiffs for the sum of $300 damages, from which judgment the appeal in this case was taken.
It appears from the evidence that in the month of September, 1876, the city of San Jose was causing Los Gatos Creek to be widened at a point where it is crossed by defendant’s road; that an excavation was made on the east side of the creek, leaving the bridge spanning the creek propped and still standing; that at the time the excavation was twenty feet wide, leaving for that distance a chasm twelve feet deep between the edge of the east bank and the east edge of the bridge, over which there were no means *106 of passage, except upon the railroad track, which was undermined and had been propped, and boards laid along the rails, but over which the cars did not and could iiot pass. As a part of the means used and adopted by the defendant for the transportation of its passengers across the chasm above referred to, defendant laid a line of planks between the rails, extending from end to end across said creek, and filling the space between the rails, but without a railing on either side thereof. There was a log, ioxio inches, lying across the east end of the plankway, which three men could have removed. On the night of September 17, 1876, while the road was in this condition, the plaintiff, Mrs. Jamison, took passage as a passenger on defendant’s car, in the city of San Jose, at a point about a mile east of the bridge. This was at 9 p. m., and the car arrived at the bridge at 9:10 p. m.
Mrs. Jamison testified as follows: “The car went as far as the creek, and then the driver threw open the door and told us to change cars. I started across the plankway, which was twenty feet long. It was so dark I could not see where I was stepping. There were no guards along the plankway, and no lights except in the car I had just vacated, and in the car on the other side of the creek, and one on the other end of the bridge, at the center of the roadway. None of these threw any light on the plank-way, or made it possible to see it. I made one step on the plank-way, and the next I went over and fell to the bottom of the excavation. I fell over because it was so dark. I could not see where I was stepping. I had passed over the plankway several times before in daylight, and knew just exactly how the track was then, and how it was planked. I had crossed it that evening going into town, before it was dark. I was badly hurt.” This statement of plaintiff was corroborated by many witnesses.
Hattabaugh, a witness for plaintiffs, testified that he was following Mrs. Jamison across the plankway, and feeling his way with his cane; and had he not seen her fall, he thought he might have fallen himself.
There was no pretense that Mrs. Jamison called for a light or guide, and the testimony showed that she did not.
Plaintiffs also proved that the passengers transported upon defendant’s cars were in the practice of passing across the plank-way for the purpose of taking the cars at either side of the chasm, and that this fact was well known to defendant and its agents.
*107 The defendant produced witnesses who testified that the road and pathway across the bridge was suitably and sufficiently lighted, so that persons with ordinary care could readily see to cross the same.
The foregoing is substantially the evidence in the case as presented by the bill of exceptions. When the evidence was closed, the defendant, by its attorney, requested the court to direct the j'ury to find for defendant, which direction the court refused to give, and thereupon defendant excepted. Verdict for plaintiffs.
The only point presented for our consideration on this appeal is, that there was such contributory negligence on the part of Mrs. Jamison as to defeat plaintiff’s right to a recovery.
The general doctrine is perfectly familiar to us, that when the negligence of the injured party contributes directly to the injury complained of, the law will afford no redress; and this principle is fully sustained by the authorities referred to by the learned counsel for the appellant. But negligence is a relative term, and is defined to be “the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent or reasonable man would not do. Moreover, it is not absolute or intrinsic, but always relates to some circumstance of time, place, or persons.” Broom’s Legal Maxims, 329; Richardson v. Kiev, 34 Cal., 75. And the question whether there was contributory negligence in any given case is generally one for the jury to pass upon and determine. “The fact of negligence is generally an inference from many facts and circumstances, all of which it is the province of the jury to find. It can very seldom happen that the question is so clear from doubt that the court can undertake to say, as a matter of law, that the jury could not fairly and honestly find for the plaintiff It is not the duty of the court in such cases any more than in any other to usurp the province of the jury and pass upon the facts. And the non-suit should only be granted in such cases where the evidence of the misconduct on the part of the injured party is so clear and irresistible as to put the case on a par with those cases where a nonsuit is granted for a failure to introduce evidence sufficient to go to the jury upon some point essential to the plaintiff’s case. The fact must be so clear that, looking upon the plaintiff’s case in the most favorable light, and giving him the benefit of all con *108 troverted questions, the court can see that a verdict in his favor must necessarily be set aside.” Schierhold v. N. B. & M. R. R. Co., 40 Cal., 447.
In the case now under consideration, it is claimed, on behalf of appellant, that the evidence clearly shows contributory negligence on the part of Mrs. Jamison, ior the reason that she was familiar with the condition of the road at the point where she was injured; that it was very dark, according to her own statement, and that it was her duty, in the exercise of ordinary prudence under the circumstances, to have called upon an employee of the company for a light. This we understand to be the argument in favor of the appellant, and the ground taken by the defendant in the court below in support of its motion for a nonsuit, or, what was more than the equivalent of a nonsuit—to wit, a direction to the jury to find a verdict in favor of the defendant.
This brings us to the question: Was it per se contributory negligence on the part of Mrs. Jamison to attempt to walk on the structure erected by the defendant for the transfer of passengers from one of its cars to the other? To our minds, and in the view we take of this case, it is an important fact that the defendant was a common carrier, and the plaintiff, Mrs. Jamison, was a passenger for hire on its line of road. The duty imposed by the law on common carriers is very clearly laid down both in textbooks and in reports. We will refer to a few authorities on the subject:
“In the next place they are bound to provide careful drivers, of reasonable skill and good habits for the journey; and to employ horses which are steady, and not vicious or likely to endanger the safety of the passengers. In the pithy language of an eminent judge, it may be said that ‘the coachman must have competent skill; he must be well acquainted with the road he undertakes to drive; he must be provided with steady horses, a coach and harness of sufficient strength and properly made, and also with lights by night. If there is the least failure in any of these things, the duty of the coach proprietors is not fulfilled, and they are responsible for any injury or damage that happens.’ ” Story on Bailments, Section 593.
“They are bound to make use of all the ordinary precautions for the safety of passengers on the road. This involves the consideration of the duties of the coachman in driving on the road. *109 If he is guilty of any rashness, negligence, or misconduct, or if he is unskillful, or deviates from the acknowledged custom of the road, the proprietors will be responsible for an injury resulting from his acts. Thus, if the coachman drives with reins so loose that he cannot govern his horses, the proprietors of the coach will be answerable. So if there is any danger in any part of the road, or in a particular passage, and he omits to give due warning to the passengers!’ Id., 598.
“Common carriers of passengers are required to do all that human care, vigilance, and foresight reasonably can under the circumstances, in view of the character and mode of conveyance adopted, to prevent accidents to passengers. To require anything less would be to leave the lives of persons in the hands of the reckless, and unprotected against the negligent and incautious.” Tuller et al. v. Talbot, 23 Illinois, 257. “It has been accordingly held that passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go—that is, for the utmost care and diligence of every cautious person; and of course they are responsible for any, even the slightest neglect.” Story on Bailments, Sec. 601; Fairchild v. California Stage Co., 13 Cal., 604; see also McElroy v. N. & L. R. R. Co., 4 Cush., 400; Whar. on Negligence, Sec. 658.
It is unnecessary for us to pursue this inquiry any further, for the principles of law regulating the duties and liabilities of common carriers are clearly and correctly stated in the authorities already referred to. Let us apply those principles to the present case. Did the defendant exercise that high degree of care imposed upon it by the law? We are clearly of the opinion that it did not. There was a dangerous point in its road, and no such precautions were taken to prevent injuries to passengers as even ordinary care, prudence, and foresight dictated. The walk was a narrow one; there was no protection on either side of it; a large piece of timber was allowed to remain across it; and above and beyond all this there were no. sufficient lights to guide passengers in their transit from one car to another. It was its-duty at least to have had the walk sufficiently lighted; and in its failure in this regard it was unquestionably guilty of negligence. Nor do we think that there was such contributory negligence on the part of Mrs. Jamison as exempts the defendant from legal liability. It is claimed that she had crossed on the structure *110 that afternoon. Suppose she had, it by no means follows that she was guilty of negligence in attempting the same feat in the evening. In the daytime the passage doubtless appeared easy and free from danger, and so it would have been in the night if it had been properly lighted.
It is also claimed on behalf of the appellant that it was the duty of the passenger to call for lights if none were supplied in advance by the company. We do not think that the law imposed any such duty upon the plaintiff. She had a right to presume that whatever light was requisite to make the passage a safe one would be provided by the defendant, and that the passengers in the car would not be sent out into the dark, at the risk of live and limb, to make a transit which could so easily have been rendered safe by the use of ordinary care and prudence.
We are of the opinion that the judgment of the court below should be affirmed, and it is so ordered.

Judgment affirmed.

We concur: Myrick, J., Sharpstein, J.