## JOHNSON v. THOMAS.

### L. A. No. 63; January 31, 1896.

#### 43 Pac. 578.

Negligence—Fast Driving—Contributory Negligence.—Plaintiff was run over at a street crossing by a wagon driven at great speed by defendant's servant. Plaintiff saw the wagon when it was about a block away, but, thinking that it would not be turned toward the side street where he was standing, because of the high speed, paid no further attention. Held, that the question of contributory negligence was properly left to the jury.

Negligence—Fast Driving—Speed Ordinance.—In an action for injuries due to fast driving, a city ordinance prohibiting fast driving is admissible to show negligence.

APPEAL from Superior Court, Los Angeles County; Walter Van Dyke, Judge.

Action by Peter Johnson against Albert Thomas for personal injuries due to negligence of defendant's servant. From a judgment for plaintiff and an order denying a new trial defendant appeals. Affirmed.

H. D. Cassidy for appellant; Variel & Davis for respondent.

SEARLS, C.—This is an action by Peter Johnson to recover damages for personal injuries received by plaintiff by being knocked down and run over by a horse and wagon driven by a servant of defendant, upon a public street in the city of Los Angeles, California. Plaintiff had a verdict and judgment for $500, from which judgment, and from an order denying his motion for a new trial, defendant appeals. Appellant makes three points for reversal: (1) That the court below erred in denying defendant's motion for a nonsuit. (2) That the court erred in admitting in evidence, on the part of plaintiff, section 4 of Ordinance 202 of the city of Los Angeles. (3) That the verdict of the jury is not sustained by the evidence.

The evidence on the part of the plaintiff, among other things, tends to show that Macy street, in the city of Los

Angeles, runs east and west, is, say, fifty-seven feet wide, and is crossed at right angles by Alameda street, which is ninety-six feet wide, with a sidewalk on the west side thereof twelve feet wide, and two railroad tracks running longitudinally through it, at or near the center thereof. Macy street, going east thereon, has, at the point in question, a downgrade of, say, seven and three-fourths feet in a distance of one hundred and seventy-five feet. Plaintiff is a cabinet-maker and carpenter, and has a shop on the west side of Alameda street one hundred and fifty feet south of its intersection with Macy street. On the fifteenth day of January, 1894, plaintiff started to go from Kerchkoff & Cuzner's mill, on Macy street, to his shop, on Alameda street. He had his apron full of blocks, brackets, etc., which he held with his right hand, and in his left hand he carried some larger articles of like character. His course took him west along the south side of Macy street, to and across Alameda street, thence south, on the west side of the latter street, to his shop. When crossing Alameda street, the horse and heavy spring wagon of defendant, driven rapidly by Albert Jennings, the servant of defendant, came east down Macy street, turned south into Alameda street, and struck plaintiff, who was upon the crossing, and within eight to ten feet of the sidewalk, on the west side of Alameda street, knocking him down, and two wheels of the wagon passing over him, whereby he was seriously injured, etc. Plaintiff first saw the horse and wagon of defendant a block away (one hundred and seventy-five feet) coming down Macy street, when he was near the center of Alameda street, and, as he testified, coming down Macy street "at terrific speed," and supposed from the rapidity with which the horse was being driven he would continue on straight down Macy street, and did not further observe the team or look for it until at or about the moment he was struck down. To the question asked plaintiff, on cross-examination, "Well, at the time when you saw him coming rapidly, didn't it excite your fear of danger at all?" He answered, "No, sir; it didn't. I supposed by the way he was coming that he was going on right down Macy street." Again, he said, in answer to what reason he had for thinking he would continue down Macy street, "He was going so fast. It is kind of a sharp turn there for a man down Macy; and, as

I said, I paid no attention.'' There was other testimony tending to show that defendant's horse was driven down the grade at ''about a four-minute gait,'' and that there were no obstructions to a clear view. There was also evidence tending to show that defendant's horse was restive and nervous; had been frightened by a passing freight train, and as a consequence was not fully under control of his driver when he came down Macy street, but that he was stopped within ''ten or fifteen feet'' after the accident. That the horse came down Macy street at a speed so great as to attract the attention and excite the interest, if not fears, of witnesses, is apparent from the testimony. Allen J. Cobb says: ''I saw a wagon coming very rapidly down Macy street. I watched it to see which way it was going, as it was coming so fast I thought I might have to dodge.'' Plaintiff introduced in evidence section 4 of Ordinance No. 202 of the city of Los Angeles, which is as follows: ''It shall be unlawful for any person to immoderately ride or drive any horse upon any public street of the city of Los Angeles, or to permit any horse or horses attached to any vehicle to gallop, run or race upon any public street of said city.''

Upon the showing made by plaintiff, the motion for a nonsuit was properly denied. Treated as a question of contributory negligence on the part of plaintiff, which proximately led to the result, the evidence falls short of a case in which the court is authorized, as matter of law, to say the plaintiff was inhibited from a recovery. As a general proposition, cases of negligence (to which those of contributory negligence form no exception) present a mixed question of law and fact, in which it devolves upon the court to say, as matter of law, what is or amounts to negligence, and upon the jury to determine, as matter of fact, whether or not, in the particular case, the facts in proof warrant the imputation of negligence. Where, however, the facts are undisputed, and the inference of negligence is irresistible, and not open to doubt, debate, or rational difference of opinion, the question becomes one of law, to be passed upon by the court: Dufour v. Railroad Co., 67 Cal. 319, 7 Pac. 769; Long v. Railroad Co., 96 Cal. 269, 31 Pac. 170; Jamison v. Railroad Co., 55 Cal. 593; Van Praag v. Gale, 107 Cal. 438, 40 Pac. 555; Davis v. Button, 78 Cal. 248, 18 Pac. 133, and 20 Pac. 545; Holmes v. Railroad Co., 97 Cal. 161, 31 Pac. 834; Wardlaw v. Railway Co. (Cal.),

ante, p. 225, 42 Pac. 1075. As was said in Van Praag v. Gale, 107 Cal. 438, 40 Pac. 555, "it by no means follows that the facts are admitted because there is no conflict in the testimony. . . . . What the plaintiff did is established without dispute and beyond cavil; but whether from this conduct the deduction is inevitable that he did not exercise the precautions for his own safety which a reasonable man would have done under precisely the same circumstances is not so clear. That this is the ultimate fact to be determined must be conceded." When plaintiff saw the servant of defendant coming down the street, driving like "Jehu, the son of Nimshi," he reasoned that he would continue down Macy street, and not make the short turn at such a rate of speed onto Alameda street. This conclusion was very likely one warranted by observation in like cases, and the inference of negligence on the part of plaintiff in not further watching the team depended upon whether or not he was justified in this reasoning. It was certainly an inference upon which minds might well differ, and hence proper to be submitted to a jury, under proper instructions. There is nothing in the testimony to show that plaintiff could have reasonably escaped injury by any amount of care, after the horse and wagon turned upon Alameda street, and to hold that a foot passenger in crossing a side street must watch and plan to escape injury from vehicles upon a main street without some indication that the latter are about to leave such main street, and that a failure so to do is conclusive evidence of negligence, is to carry the doctrine of contributory negligence to a romantic and unwarranted length. The evidence of negligence on the part of defendant's servant was ample, and the motion for a nonsuit was properly denied.

2. The section of the city ordinance was properly admitted in evidence. "The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur. Thus, the violation of a statute or ordinance regulating the speed of vehicles, horses or trains . . . . is such a breach of duty as may be made the foundation of an action by any person belonging to the class intended to be protected by such a regulation, provided he is specially injured

thereby'': Shear. & R. Neg., 4th ed., sec. 13, and cases there cited.

3. The evidence was sufficient to uphold the verdict. To discuss it at length can be productive of no good. Many of the incidents testified to by Jennings, the driver of the horse, were sharply contradicted, and in such a case the action of the jury thereon is conclusive. The judgment and order appealed from should be affirmed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.