[S. F. No. 995.   Department Two.—September 5, 1899.]

PATRICK HENNESEY, Respondent, v. HENRY BINGHAM, Appellant.

NEGLIGENCE—SUPPORT OF VERDICT—CONFLICTING EVIDENCE—PRESUMPTION UPON APPEAL.—In an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, where the evidence is conflicting it must be presumed upon appeal from a judgment for the plaintiff that the jury believed those witnesses whose testimony was favorable to the plaintiff.

ID.—ASSUMPTION OF RISK BY SERVANT—QUESTION FOR JURY—REFUSAL TO INSTRUCT FOR DEFENDANT.—Where the jury were warranted in finding from the evidence that the mode adopted by the defendant in carrying on the work in which plaintiff was employed was unusually and unnecessarily hazardous, and that in the hurry and noise of the work the warning given was insufficient to protect the workmen from dangers attending the work, the question whether the plaintiff, by accepting the employment, assumed the risk of the injury suffered. is for the jury to determine, and it was proper to refuse to instruct them to find for the defendant.

ID.—DUTY OF MASTER TO PROVIDE SAFE PLACE—FORMER EXPERIENCE OF SAFETY—QUESTION FOR JURY.—It is the duty of a master to use due diligence to provide his servant with a safe place in which to do his work. Former experience of safety may have some bearing upon the question as to whether he has taken the proper precautions, but its value is for the jury to determine, and it is not a proper basis of an instruction to find for the defendant.

ID.—NEGLIGENCE, WHEN A QUESTION FOR JURY.—When different conclusions as to negligence can reasonably be drawn from the admitted facts, the inference as to the ultimate fact is within the province of the jury, though the facts are undisputed; and it is not proper for the court to instruct the jury as to which inference is to be adopted by them.

ID.—MISLEADING INSTRUCTION—SECURITY OF DEFENDANT BY WARNING FROM FELLOW-SERVANT—ASSUMPTION OF UNUSUAL RISK—QUESTIONS FOR JURY.—A requested instruction to find for the defendant, if the jury should find that plaintiff accepted the employment with the understanding that his safety was to be secured by the giving of a warning required to be given by a competent fellow-servant, and such further care on his part as should be necessary, is misleading, in not submitting to the jury the questions of fact raised by the evidence whether the defendant was not subjected to unusual risk at the time of the injury, and whether, under the circumstances, the defendant under-

stood and had the right to believe that plaintiff knew and assumed the unusual risk.

ID.—OBJECT OF WARNING—NEGLECT OF FELLOW-SERVANT—NEGLECT OF MASTER TO PROVIDE SAFE PLACE.—Under a warning provided by the master as additional security to the workmen from the ordinary risks of accident, in a hazardous employment conducted by the master with ordinary care, the employer is not protected by the neglect of the fellow-servant of the plaintiff to give adequate warning, if the master has contributed to the injury by failure on his part to use ordinary care in the mode of doing the work, by which he has neglected to provide a safe place for his workmen, and subjected them to unusual risks not assumed by them, when they accepted the employment, in which case he cannot evade responsibility for his duties by putting them upon a fellow-servant.

ID.—EVIDENCE—CUSTOM AMONG STEVEDORES IN HANDLING LUMBER. Where the plaintiff was an experienced stevedore employed by the defendant in handling lumber, lowered into the hold of a vessel, and was injured by the slipping of lumber from an unsecured end of a lowered box, which bounded upon him, evidence for the defendant is admissible to show what was the custom of stevedores in handling such lumber, and what were the respective duties of the workmen engaged in the work, and especially the duties of the hatchman and other servants engaged in lowering the freight; and such evidence is relevant and material as tending to show what care was taken by the defendant in the work, and also what risks the plaintiff assumed by the employment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Van Ness & Redman, for Appellant.

If the hatchman failed to give warning, it was the negligence of a fellow-servant, for which defendant is not responsible, and the question of safe place is not involved in such a case. (Civ. Code, sec. 1976; *Hermann v. Port Blakely Mill Co.,* 71 Fed. Rep. 853; *Davis v. Southern Pac. Co.,* 98 Cal. 13, 19; *Ocean S. S. Co. v. Cheney,* 86 Ga. 278; *Martin v. Atchison etc. R. R. Co.,* 166 U. S. 399; *McDonald v. Hazelline,* 53 Cal. 35; *Kevern v. Providence etc. Co.,* 70 Cal. 392; *Trewatha v. Mining Co.,* 96 Cal. 394; *McLean v. Blue Point etc. Co.,* 51 Cal. 255.) The court erred in excluding the evidence as to the customary practice of steve-

dores. (*Burns v. Sennett*, 99 Cal. 363; *Sappenfield v. Main etc. R. R. Co.*, 91 Cal. 48.) The plaintiff assumed all risks of the employment which were known to him as an experienced 'longshoreman, fully acquainted with the methods used by stevedores in the loading of vessels. (*Clark v. St. Paul etc. Ry. Co.*, 28 Minn. 128; *Money v. Lower Vein Coal Co.*, 55 Iowa, 671; *Yates v. McCullough Iron Co.*, 69 Md. 370; *Walsh v. St. Paul etc. Ry. Co.*, 27 Minn. 367; *Heath v. Whitebreast Coal etc. Co.*, 65 Iowa, 737; *Wilson v. Winona etc. Ry. Co.*, 37 Minn. 326; 5 Am. St. Rep. 851; *Alexander v. Tennessee etc. Min. Co.*, 3 N. Mex. 173; *Needham v. Louisville etc. Ry. Co.*, 85 Ky. 423.)

Reddy, Campbell & Metson, for Respondent.

A master is bound to use reasonable diligence to furnish his employees with a safe place for them to work, and to protect them against dangers incident to their employment. (Shearman and Redfield on Negligence, sec. 92, p. 119; *Higgins v. Williams*, 114 Cal. 176; *Mullin v. California Horseshoe Co.*, 105 Cal. 77; *Nixon v. Selby Smelting etc. Co.*, 102 Cal. 458; *Elledge v. National City Ry. Co.*, 100 Cal. 282; 38 Am. St. Rep. 290; *Anderson v. Ogden Union Ry. & Depot Co.*, 8 Utah, 128.) Where the negligence of the master contributes with that of a fellow-servant, the master is responsible. (*Fisk v. Central Pac. R. R. Co.*, 72 Cal. 38, 42; 1 Am. St. Rep. 22; *Grand Trunk Ry. Co. v. Cummings*, 106 U. S. 700, 702; Thompson on Negligence, 981, and cases cited.) This rule applies to the negligence of a fellow-servant to give warning, combined with the negligence of the master. (*Richmond etc. Ry. Co. v. George*, 88 Va. 223; *Cincinnati etc. Ry. Co. v. Clark*, 57 Fed. Rep. 125.)

TEMPLE, J.—This is an action for damages for personal injuries alleged to have been suffered by plaintiff while in the employ of defendant. Defendant was a stevedore, and was engaged in loading dressed lumber upon the steamer "Aztec" at the Pacific Mail Steamship Company's dock. The lumber was delivered by the shippers in boxes, which consisted of four boards nailed together, and were about fifteen feet long and eight inches in each of the other dimensions. Sometimes the ends of the boxes were closed by wires, and sometimes they were not. Whether they were usually so closed, and whether it was negli-

gence to load them on the vessel in the mode adopted, without being so closed, are matters of interest in this case. As the jury found for the plaintiff, we are bound, if necessary to support the verdict, to assume that the jury believed those witnesses who testified that when loaded on the ship in boxes, as this lumber was, the ends of the boxes were nearly always closed, and if not so closed the lumber was very likely to slip out.

The lumber was taken from the wharf by the side of the vessel, where a chain was wrapped around two boxes containing lumber, and one end of the chain, having been put through a ring at the other end, was attached to a block and tackle and raised to the deck of the vessel and above the hatchway, through which it was then lowered to the hold of the vessel, where there were two gangs of workmen, who took alternate loads, stowing the lumber, one gang on one side of the ship and the other on the other side. It took about two minutes for each gang to stow its load, and they were lowered into the hold at the rate of one load each minute. The men took one box at a time, and, per consequence, they would be at the hatchway for the second box at about the time a load was coming down for the other gang. There were four compartments in the ship, and freight was being stowed in each compartment at the time of the accident. The work was being rushed as much as possible, as, according to the testimony, this kind of work always is. The men are paid by the hour, and understand that they must work as fast as possible or they will be ordered out. There was a great deal of noise about the ship while the work was in progress.

Defendant had stationed a man on the upper deck at the hatchway, whose duty it was to call out to the men at work in the hold, warning them of danger when the load was about to be lowered through the hatchway. He was called "the hatchman," and was accustomed to call out in a loud voice, "Stand clear below." There was plenty of room for the men to get away from danger, and it was shown that on this occasion, as a rule, the warning was given in time and was heard. There was evidence which tended to show that the warning was not given on the particular occasion when plaintiff was injured. Plaintiff testified that he did not hear it, and other witnesses testified that in the hurried work, with the great noise which prevailed, it

might not be heard or heeded if given. The men were, however, accustomed to rely upon the warning, more or less, for their security, as from various causes the load, or some part of it, might fall at any time while being lowered.

There was evidence which tended to prove that plaintiff was injured when in the act of picking up a box of lumber, not directly under the hatchway, but two feet inside the coamings. The contents of the box, consisting of fifteen or more boards, slipped out "like pouring water out of a glass," struck the shaft tunnel, and "bounced off" upon the plaintiff, injuring him very severely.

The theory of the plaintiff's case seems to be that the employer failed to furnish to plaintiff a safe place in which to do his work, and that the injury resulted from unusual and unnecessary hazard, which plaintiff did not assume by accepting the employment.

Counsel says: "Neither the failure of plaintiff to hear and heed the warning, if it was in fact given, nor the failure to give the warning, was the proximate cause of the injury, but this proximate cause was the negligence of the defendant in loading into the ship boxes of lumber that were liable to shoot their whole contents into the hold of the vessel so as to injure the workmen, not only if they were standing directly underneath the hatchway, but even if they were several feet underneath the coamings, as was the plaintiff in this case at the time he was injured." Defendant, it is contended, was carrying on a hazardous employment in a reckless manner, and the warning, if given, was not an adequate protection against this unnecessary danger.

Defendant contended that such boxes of lumber were quite frequently shipped from this port, and that sometimes they were sent by the shipper with the ends of the boxes closed and sometimes open; that the stevedore took the lumber as it was delivered to him and loaded it in the condition in which he found it, and prevented injury to the men below by stopping the lumber at the coamings and giving a warning to the men below; that this was the usual and customary mode of doing the work, and had been found to be, and was in fact, a sufficient protection. Plaintiff was a stevedore, who admitted that he had often as-

sisted in loading such boxes, and knew all the hazards of the employment, and understood the purpose of the warning, and, as defendant did station at the hatchway a competent man to give the warning, defendant is not liable if plaintiff failed to heed the warning, or if his fellow-workmen neglected to give it.

So far as there is a conflict of evidence the presumption must, of course, be in favor of the respondent, except when we are considering the rulings in regard to the instructions.

One of the witnesses for the plaintiff testified that such lumber is usually delivered in boxes and is wired over the ends to keep the lumber from sliding out. If it is not wired, the lumber is sure to slide out. "It is usual and customary on the waterfront in San Francisco, in loading lumber of that character, to have obstructions across the ends of the boxes to keep the timber from falling out." The wires, he said, are put on in the lumber yard, but if it is delivered at the wharf without wires it is shipped in that condition. He had known the shipper to be sent for and required to put on wires. He said, however, that it was no part of the stevedore's business to put on the wires, but to load the ship with the freight as delivered.

Plaintiff testified that they had been at work about one-half hour before he was hurt. Some lumber had fallen before that time. He came to assist in stowing the second case. He heard no warning, but looked, and seeing the hatchway clear, stopped to pick up the case, when the lumber being lowered slipped from the case, struck the shaft tunnel which ran across that hatch, bounded off, and hit him. He was not at the time under the open hatchway, but was about two feet inside the coamings. As to the warning, he said: "That is the usual and customary mode of giving to the men working in the hold full notice and warning to get out of the way of the load that is to be sent down the hatch."

The hatchman testified that the box from which the lumber fell had no wire upon it.

Defendant's witnesses gave nearly the same evidence, except that they emphasized the fact that such boxes were often stowed by stevedores without wires, and that the sling chains compress the lumber even in the boxes and usually prevent its slipping. They also testified that the precautions taken in this case are

such as are usual in such cases, and contended that such precautions had usually been found sufficient.

1. The first proposition of appellant is that the court erred in refusing to instruct the jury to find for the defendant. This contention, I think, cannot be sustained. The jury were warranted in finding from the evidence that loading timber of this character in the mode adopted was unusually and unnecessarily hazardous. Whether the plaintiff by accepting the employment assumed such risk was for the jury to determine. There was also evidence which could have justified a finding that in the hurry of the work and the noise the warning was insufficient to protect the workmen from the dangers which attend the work.

2. The defendant asked the court to give to the jury a long instruction to the effect that if they found that in loading lumber upon a ship, as this was being loaded, it was customary to station a man at the hatch to give such warning as has been described, and upon hearing the signal it was customary for the men to get to a place of safety, "and this means of warning the men had theretofore been found to be a safe and sufficient mode for the protection of the men so working in the hold," et cetera, and that all these precautions had been taken by defendant, then their verdict must be for the defendant. The court modified the instruction by striking out the words "had theretofore been found to be" and inserting the word "was."

I think the modification was proper—carelessness does not always result in injury. In a case of continued carelessness, when injury results, a common remark is that it is strange it did not happen before. Defendant will not be exonerated because others have been reckless and no one has been injured. As remarked in *Monaghan v. Pacific Rolling Mill Co.*, 81 Cal. 190: "That circumstance is only a matter of wonderment, and is an instance of how good luck will sometimes protect carelessness for long periods." The master's duty was to use due diligence to provide plaintiff a safe place in which to do his work. Former experience may have some bearing upon the question as to whether he has taken the proper precautions, but its value is for the jury.

I may remark, these hypothetical instructions are always dangerous, and especially so in a case of alleged negligence. Negli-

gence is the ultimate fact to be inferred from many probative facts. The inference is within the province of the jury, even when the facts are undisputed. When different conclusions as to negligence can reasonably be drawn from the admitted facts, it is not for the court to instruct the jury as to which is to be adopted by them.

The defendant also asked for an instruction which may be summarized thus: If it was not Bingham's duty to close the boxes so that the lumber would not slip out, but to load it into the ship as it was received, giving proper warning, as already explained, and a competent hatchman was employed to give the warning, and, if given, the workmen could have avoided the danger, "and the plaintiff accepted employment from the defendant Bingham with the understanding that his safety in the hold was to be secured by the giving of the warning referred to, and such further care on his part as should be necessary, then, and in that case," the verdict should be for the defendant.

The instruction is misleading. When the jury find that it was "only his duty to load the lumber into the ship as he received it, giving such warning," et cetera, they have found the entire issue as to negligence for the defendant. But this was probably not what was intended. Probably counsel meant, if the jury find that that was what he contracted to do. Respondent contends that he violated his duty when he loaded into the ship lumber in that condition, in that mode, and that the warning was not a sufficient protection, and that the risk, not being an ordinary risk of employment, was not assumed by the plaintiff. The jury were not required to find by this instruction that plaintiff knew that this particular lumber was to be loaded upon the ship in boxes, the ends of which had not been closed, and there was evidence to the effect that usually they were closed. Whether plaintiff assumed these unusual risks or not depended upon the question whether, under the circumstances, defendant understood and had a right to believe that plaintiff knew and assumed them. (*Martin v. California etc. Ry. Co.*, 94 Cal. 326.) Plaintiff may have been willing to depend upon the warning for his safety as against the ordinary risks of the work. Whether he was not in this case subjected to more than the ordinary risks of the employment was an important question and was for the

jury.   Plaintiff himself testified that such lumber was sometimes loaded in open boxes.   This was very important evidence on this issue for the defendant, but is still left a question for the jury, which this instruction would have taken from them.

I understand the warning was provided as additional security to the workmen from dangers resulting when the freight was being lowered into a hold, not dropped, and because, although the master used ordinary care to see that it was properly handled and safely lowered, still accidents might happen.   But if the employer has failed to use ordinary care in the mode of doing the work, and, therefore, injury has resulted, he has failed to provide a safe place for the workmen to do their work, and has subjected them to unusual risks, which they did not assume by accepting the employment unless they knew of the unusual risks.   (*Elledge v. National etc. Ry. Co.*, 100 Cal. 282; 38 Am. St. Rep. 290; Civ. Code, sec. 1971.)   In such case the neglect of the employer in respect to duties which he cannot evade, by putting them upon a coemployee, has contributed to the injury, and he is responsible.

But this argument in favor of the rulings of the court below in regard to the instructions necessitates the reversal of the case upon another ground.   The learned judge of the trial court evidently disagreed with the theory of the case which was acted upon by the defendant, and exception was taken to thirty-eight rulings made against the defendant in regard to the admission of evidence.   Evidence was rejected which tended to show what was customary among stevedores in San Francisco in handling such lumber, and what the respective duties were of the workmen who were engaged in the work—that is, what was required of each, and especially of the hatchman and others engaged in lowering the freight.

I think this evidence was relevant and material.   It tended to show what care was taken by the defendant in the work, and also what risks the plaintiff assumed by the employment.   Plaintiff's own testimony shows that he was an experienced stevedore, and had long been employed as such at San Francisco.   As to some of the evidence it might, perhaps, be shown that it was immaterial or that the particular ruling was not harmful, but that

certainly cannot be said as to all, and a more minute discussion could not be useful.

The judgment and order are reversed and a new trial ordered.

McFarland, J., and Henshaw, J., concurred.