[Civ. No. 287.    First Appellate District.—February 5, 1907.]

## MARY MAXWELL, Respondent, v. FRESNO CITY RAILWAY COMPANY, Appellant.

CARRIERS OF PASSENGERS—DUTY OF UTMOST CARE—LIABILITY FOR SLIGHT NEGLIGENCE.—Carriers of passengers must use the utmost care and diligence for their safety, and are liable to them for injuries caused by their slight negligence.

ID.—CONTINUANCE OF RELATION—ALIGHTING OF PASSENGERS.—The relation between the carrier and passenger continues until the passenger has alighted; and the carrier must exercise as high a degree of care in affording a passenger a reasonable opportunity to alight in safety as in carrying him safely.

ID.—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—MATTER OF LAW.—The negligence of the carrier and the contributory negligence of the passengers are peculiarly questions for the jury, when different conclusions may be reasonably drawn from the proved facts, whether the evidence is conflicting or not. The case must be a clear one, as matter of law, to justify the court in holding the evidence insufficient to sustain a verdict for the plaintiff.

ID.—STOPPAGE OF CAR AT UNSAFE PLACE—HIGH STEP INTO GUTTER NEAR CURB—MATTER NOT OF LAW.—Where defendant's street-car stopped at an unsafe place near the end of a curb gutter, where the lowest step was twenty inches above the ground, which slopes to a depth of two feet six inches nearer the curb, and plaintiff's foot was

injured in alighting for transfer, and it appears that the car could have been stopped where plaintiff would not have been injured, it cannot be said, as matter of law, that defendant was not guilty of negligence, nor that the plaintiff was guilty of contributory negligence.

ID.—REASONABLE CONDUCT OF PLAINTIFF—INVITATION TO ALIGHT— RELIANCE UPON CARRIER'S CARE.—Although the plaintiff, with a grip in her hand, made no careful examination of the ground on which she stepped, it cannot be said that the jury were bound to find that she did not exercise the care that a reasonable person would under the circumstances. By stopping the car as it did, and with steps immediately in front of her, the defendant, in effect, invited her to alight at that point. The passenger may rely somewhat upon the carrier's care, and is only called upon to act as a reasonable person would under the circumstances.

ID.—APPEAL—ARGUMENT—QUESTION RAISED IN REPLY BRIEF.—The appellate court will not, unless under exceptional circumstances, consider questions raised for the first time in the reply brief of the appellant, not in any manner referred to in the opening brief.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, and F. E. Cook, for Appellant.

Everts & Ewing, for Respondent.

HALL, J.—Plaintiff brought this action against defendant to recover damages for injuries sustained by her while a passenger on a car operated by defendant. The jury having rendered a verdict for plaintiff, defendant moved for a new trial, and this being denied, appealed from the order denying its motion for a new trial as well as from the judgment.

It is urged that the evidence in the case fails to show that defendant was guilty of any negligence, and that it does show that the plaintiff's own negligence was the cause of her injury, or contributed thereto.

Plaintiff took passage on one of defendant's cars, and in stepping from such car to the ground, when the car had stopped for her to transfer to another car of defendant in order to complete her trip, her ankle was seriously injured. In her complaint she charges that defendant neglected to maintain a proper and suitable place for passengers to alight,

and that on the occasion in question it carelessly and negligently operated its car so as to stop the same for plaintiff to alight at an unsuitable and dangerous place.

Common carriers of passengers are bound to exercise a very high degree of care, and are liable for slight neglect. "A common carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (Civ. Code, sec. 2100.)

They are responsible for negligence, and are required to use the greatest care in the transportation of their passngers. (*Jamison* v. *San Jose etc. R. R. Co.*, 55 Cal. 593; *Wheaton* v. *North Beach etc. R. Co.*, 36 Cal. 590; *Carr* v. *Eel River etc. R. R. Co.*, 98 Cal. 365, [33 Pac. 213] ; *Fairchild* v. *Cal. Stage Co.*, 13 Cal. 599.)

"There can be no question that the relation of carrier and passenger continues while the passenger is expeditiously engaged in the act of carefully and prudently alighting from the car, and that the carrier is bound to exercise the same high degree of care in affording a passenger a reasonable opportunity to alight in safety as in carrying him safely." (*Cody* v. *Market St. Ry. Co.*, 148 Cal. 90, [82 Pac. 666]. See, also, *Ft. Worth etc. Ry. Co.* v. *Kennedy*, 12 Tex. Civ. App. 654, 35 S. W. 335; *St. Louis etc. Ry. Co.* v. *Finley*, 79 Tex. 85, [15 S. W. 266] ; *Fairmont Ry. Co.* v. *Stutter*, 54 Pa. St. 375, [93 Am. Dec. 714].)

In examining the evidence in this case, it must also be borne in mind that whether the evidence shows negligence is peculiarly a question to be determined by the jury, and when different conclusions may reasonably be drawn from the proven facts, even where there is no conflict in the evidence, the question of negligence is for the jury. (*Hennesey* v. *Bingham*, 125 Cal. 627, [58 Pac. 200] ; *Fox* v. *Oakland Con. St. Ry.*, 118 Cal. 55, [62 Am. St. Rep. 216, 50 Pac. 25] ; *Pacheco* v. *Manufacturing Co.*, 113 Cal. 541, [45 Pac. 835] ; *Buchel* v. *Gray Bros.*, 115 Cal. 421, [47 Pac. 112] ; *Herbert* v. *Southern Pacific Co.*, 121 Cal. 277, [53 Pac. 651] ; *Wahlgren* v. *Market St. Ry. Co.*, 132 Cal. 656, [62 Pac. 308, 64 Pac. 993] ; *Wikberg* v. *Olson Co.*, 138 Cal. 479, [71 Pac. 511].)

In the case last cited (*Wikberg* v. *Olson Co.*) it is said: "Negligence cannot be defined and measured by any precise standard. It is always relative to particular facts and cir-

cumstances upon which it is sought to be predicated. As a general rule, it is a question for the jury to determine from the facts and the logical inferences therefrom. It is only in cases where the facts are without dispute, or the deduction inevitably that of no negligence, that the court can say, as matter of law, that no negligence was proven. The case must be a clear one, which would justify the court in holding the evidence insufficient to sustain the verdict.''

To the same effect see *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 482, [66 Pac. 734].

With the foregoing principles in mind, we now proceed to an examination of the evidence in the case.

Defendant, at the time of the accident in question, operated a street railroad in the city of Fresno. One of its tracks ran north and south on ''J'' street, and another ran east and west on Stanislaus street, and connected with the ''J'' street track at the intersection of the two streets. Each line was a single track line. The Stanislaus track, as it approaches the ''J'' street, divides into two spurs or tracks, one curving to the north and thus connecting with and running into the ''J'' street track, and the other curving to the south and thus running into the ''J'' street track. The plaintiff, on the day of the accident, boarded a car on the Stanislaus street line for the purpose of going to the Southern Pacific depot. This car did not go to such depot, and in order to complete her trip she was obliged at the intersection of Stanislaus and ''J'' streets to transfer to a ''J'' street car going south. The car upon which she took passage consisted of an inclosed portion in the center for the use of passengers, and an open portion at each end, also fitted for and used by passengers. It is not perfectly clear to us whether the seats on the open portions of the car extended across the car, or ran lengthwise with the car, but we infer from what appears in the record before us that the seats extended lengthwise with the car. At any rate, the seats were reached by steps extending along the side of the open part of the car, so that passengers could get on or off the car immediately opposite any given seat on the open portion of the car.

Plaintiff took a seat on the northerly or right-hand side of the Stanislaus street car going westerly toward ''J'' street, on the front open portion next to the front window. When the car reached ''J'' street it took the northerly curve, and

was stopped on the curve so that plaintiff might transfer to a "J" street car going south. As the track curves around the northeast corner of "J" and Stanislaus streets the nearest track is five feet from the sidewalk curb at the corner. The street slopes from the track to the curb, the slope being greater as it approaches the curb, thus forming a gutter. The car was stopped so that the open portion on which plaintiff sat was opposite to the corner formed by the junction of the north gutter on Stanislaus street with the east gutter on "J" street, and the car stood practically at right angles to a line bisecting the angle formed by the north line of Stanislaus street and the east line of "J" street. This seems to be the only point where the gutter approaches within stepping distance of the step of a car standing on the track. The evidence shows that at this point the distance between the second or lower step of the car and the ground immediately below was twenty inches, and at six inches nearer the curb it was twenty-four inches. The step was one foot and ten inches from the curb. The distance from the lower step to the ground on the south side of the car was thirteen or fifteen inches. The car to which plaintiff desired to transfer having stopped on "J" street somewhat in front of her car, she got off her car from the side upon which she sat, and in so doing stepped into the gutter, and thereby injured her foot.

At the trial of the case a diagram of the premises was used, which is not reproduced in the transcript, but in appellant's brief there is a diagram, the correctness of which is not challenged by respondent except that it does not show the position of the "J" street car in accordance with the evidence given by plaintiff. We have therefore in our examination of the evidence used the diagram attached to plaintiff's brief. From the evidence it appears that the car could have been stopped at a point where no portion of the car from which passengers could alight would have been opposite the corner formed by the junction of the gutters, and it is certain that the car could have been so stopped that plaintiff would not have been opposite such corner. Though it is true, as claimed by appellant, that defendant had no control over the grade of the street, it did have control of its car, and could have stopped it at a safe place, or at a place where there was no unusual depression into which plaintiff would be likely to step

in getting off the car. The depression into which she stepped was one of circumscribed superficial area so far as it approached near to the car track, and for that reason, perhaps, all the more dangerous, as being more liable to be overlooked by a passenger in getting off the car. The general surface of the ground about the car was much less below the level of the lower step than was the ground immediately opposite where plaintiff was sitting. The car was twenty-seven and a half feet long, and the switch or curved portion of the track was one hundred and twenty-five feet long. It appears that the car could have been stopped so that neither the portion upon which plaintiff sat, or any portion from which a passenger could alight, would have been within stepping distance of the gutter. The car could have been stopped at a convenient point for transferring passengers where the distance from the lower step to the ground did not exceed fifteen inches.

The facts above referred to, we think, tend to support the conclusion that defendant did not use the utmost care for the safety of plaintiff.

Neither can we say as a matter of law that plaintiff was guilty of contributory negligence.

She testified that though she had frequently ridden on the cars of defendant over this route, she had never specially noticed the conditions where she got off upon this occasion. That she did not think she had ever before sat on the north side of the car, as she lived on the south side of the street, and she was certain that she never before got off on the north side at that transfer point. When the car stopped on this occasion for her to make the transfer, she was looking at the ground in front toward the other car, and she did not take special notice of the ground onto which she stepped in alighting from the car. She had a grip with her. She said: ''I looked at the ground to determine how far I should walk and where I should walk across to get the car. I stepped off the car and that is all.''

Although it is apparent that she made no careful examination of the ground onto which she stepped, we cannot say that the jury were obliged to say that she did not exercise the care that the average person would use under similar circumstances. By stopping the car as it did, and with steps immediately in front of her, the defendant in effect

invited her to get off at that point.    "While the carrier must exercise a high degree of care to safely transport and deliver its passengers, the passenger may rely somewhat on the carrier's care, and is only called upon to act as a reasonable person would under the circumstances."    (Nellis on Street Surface Railroads, 520.)

The facts of the case at bar are in their essential particulars strikingly similar to *Bass* v. *Concord St. Ry. Co.,* 70 N. H. 170, [46 Atl. 1056], where a car conductor stopped the car somewhat beyond the place where the plaintiff (a woman) desired to get off, and at a point where there was opposite to the place where she sat a depression in the ground from two to eight inches in depth, and "the distance from the running-board to the ground, where one would naturally step, was greater than at the entrance to the cemetery" (the place at which she desired to alight). She testified in substance that when the car stopped she simply stepped off without making any special examination of the ground upon which she stepped.    The accident occurred in the daytime.    The verdict for the plaintiff was sustained, the court holding that there was sufficient evidence of negligence on the part of the defendant, and that the facts did not as matter of law necessarily show contributory negligence on the part of plaintiff. Upon this latter point the court said: "It may be conceded that, if the plaintiff had looked, she would have refrained from stepping as she did, and still the defendant may be liable.    The fact that more precaution on her part would have prevented the accident does not necessarily defeat a recovery. The question is whether some fair-minded men might say that, with her knowledge and in her situation, she acted with reasonable prudence, without further investigating the condition of the ground she was to alight upon.    The test of her right to have the question of her care determined by a jury was not whether she did all that she could do in the way of taking precautions, but whether she did enough so that her conduct might be thought to be that of a person of average prudence."

In the case at bar the jury and the trial judge visited and inspected the place where the accident occurred, and for that reason were better able to judge of the condition there than is this court.

We cannot say from the evidence before us that, as a matter of law, defendant was not guilty of negligence, or that plaintiff was guilty of contributory negligence.

No other point is raised by appellant in its opening brief. In its reply brief defendant calls our attention to the refusal of the court to give certain instructions requested by defendant. It is only under exceptional circumstances that this court will consider questions not raised in the opening briefs. No such exceptional circumstances are suggested in this case. (*Kahn* v. *Wilson,* 120 Cal. 643, [53 Pac. 24] ; *Phelps* v. *Mayers,* 126 Cal. 549, [58 Pac. 1048] ; *Webber* v. *Clarks,* 74 Cal. 11, [15 Pac. 431].)

The judgment and order appealed from are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.