[Civ. No. 2379.    First Appellate District.—April 3, 1918.]

MARY FITZGERALD, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

NEGLIGENCE—INJURY TO PASSENGER LEAVING RAILROAD TRAIN—PLEADING AND EVIDENCE—LACK OF VARIANCE.—In an action for personal injuries received by a passenger while leaving a railroad train at a station, a variance is not created by the allegation of the complaint that plaintiff was thrown from the train and the evidence which showed that she fell from the train in consequence of its starting before she had time to alight.

COMMON CARRIERS—DUTY TO PASSENGERS.—Carriers of passengers must use the utmost care and diligence for their safety and are liable for injury caused by their slight negligence.

ID.—OPPORTUNITY TO ALIGHT—DUTY OF CARRIER.—The relation between carrier and passenger continues until the latter has alighted, and the former must exercise as high a degree of care in affording passengers a reasonable opportunity to alight in safety as in carrying them safely.

ID.—ALIGHTING FROM MOVING TRAIN — CONTRIBUTORY NEGLIGENCE — QUESTION OF FACT.—While particular circumstances may in some cases justify the court in declaring as a matter of law that a passenger is negligent in alighting from a moving train, the general rule is, the question is one of fact for the jury to determine from all of the circumstances of the particular case.

ID.—DAMAGES NOT EXCESSIVE.—In an action for personal injuries received by a passenger while attempting to alight from a railroad train caused by the starting of the train before she had time to alight, a verdict for the sum of five thousand dollars was not excessive where as a result of her fall the plaintiff, who prior to the accident was an able-bodied woman performing the housework for a family, was rendered helpless, requiring the constant assistance

of others, and it was shown at the trial, which occurred two and one-half years after the injury, plaintiff was unable to walk except with crutches, and to all appearances her injuries were permanent.

APPEAL from a judgment of the Superior Court of Santa Clara County.   P. F. Gosbey, Judge.

The facts are stated in the opinion of the court.

Louis Oneal, and James P. Sex, for Appellants.

E. M. Rea, and John P. Fitzgerald, for Respondent.

BEASLY, J., *pro tem.*—Plaintiff was injured on the ninth day of November, 1912, while leaving a Southern Pacific train at Madrone Station, in Santa Clara County, and defendant appeals from a judgment in her favor on account thereof entered pursuant to the verdict of a jury.

The first claim of defendant is of a variance between the complaint and the proofs of plaintiff, it being claimed that the complaint alleged only that plaintiff was thrown from the train and that this is not shown by the evidence.

Plaintiff's cause of action as stated in her complaint is that while she was a passenger on defendant's train, and when in the act of getting out of and off from its car and being still thereon, the said car was, through the negligence of defendant and its agents, servants, and employees, suddenly started without allowing plaintiff sufficient time to get off, and in further consequence of the insufficient alarm preparatory to starting the train and of the negligence of defendant's employees in running and conducting the train, the plaintiff was violently thrown therefrom to her injury.

The testimony shows that Miss Fitzgerald was a passenger on a train of the defendant from San Jose to her home at Madrone Station on the day of her injury; that she was sitting in the rear coach about one-fourth of the way back from its front door when the train stopped at Madrone; that the train stopped there for a very brief time, the brakeman being ready to give the signal to start the train when it stopped, and no warning being given her of the starting of the train; that when she knew the train had stopped at Madrone she left her seat and walked as fast as she could to the front platform of the coach; and that when she got

inside of the steps she saw that the train was very slowly moving; that she then got down as quickly as she could and got off the step, or as she says at one point of her testimony, "jumped off"; that while she could see that the train was, moving it was not going very fast, but that it was just moving and that was all. She fell on the platform and was picked up suffering from a broken hip. There was, in addition to these facts, the evidence of several impartial witnesses, who were either passengers on the train or had business at the platform when the train stopped, from which the jury was warranted in finding that the train stopped for an unusually short interval on this occasion. It further appears that Miss Fitzgerald was seventy-one years old; that had she been carried past her station, the next stop would have been four miles away; that her train check, showing that she was a passenger for Madrone, was not taken up by the conductor, thus indicating that the train officer overlooked the fact that she was destined for Madrone Station; and it further appears that the conductor was an extra conductor, on that run for the first time. From all this it appears that the jury were justified in finding that the train was started so quickly as to give the plaintiff no sufficient time to leave it and that in consequence thereof she fell and was injured. The complaint appears to be a sufficient basis for the admission of this evidence. That the defendant knew the case which it must meet to be that which the plaintiff presented appears from the defendant's answer, in which it denies that she sustained her injury "by reason of any fall from said train or by reason of being thrown therefrom," and avers "that she willfully attempted to alight from said train while it was in motion." The distinction upon which defendant bases its claim of a variance is one of verbiage, not of meaning; and the defendant was in no way surprised or misled thereby. Further, this objection of defendants was not definitely pointed out at the trial when, if sound, it might have been removed by a simple amendment. Even if plaintiff's contention as to variance were correct, still the complaint and answer are to be read together, and as it appears by so doing that the defendant was not prejudiced thereby in any substantial right, the matter is within the rule of section 475 of the Code of Civil Procedure, and the case will not be reversed on this ground.

It is contended that as a matter of law the evidence shows the plaintiff to have been guilty of contributory negligence in getting off the train, and that the manner in which she did so, and not any of the alleged acts of the defendant, was the sole proximate cause of her injury.

Carriers of passengers must use the utmost care and diligence for their safety and are liable for injury caused by their slight negligence. The relation between carrier and passenger continues until the passenger has alighted. The carrier must exercise as high a degree of care in affording passengers reasonable opportunity to alight in safety as in carrying them safely. (*Maxwell* v. *Fresno City Ry. Co.*, 4 Cal. App. 746, [89 Pac. 367].)

It was conceded upon the oral argument that there was sufficient evidence to warrant the jury in finding negligence on the part of the defendant in not stopping its train for a sufficient length of time to enable the plaintiff to depart therefrom in safety. The facts which it is claimed establish negligence of the defendant and contributory negligence of the plaintiff are interwoven. The questions are questions of fact for the jury. (*Carr* v. *Eel River etc. R. R. Co.*, 98 Cal. 366, [21 L. R. A. 354, 33 Pac. 213]; *Raub* v. *Los Angeles etc. R. R.*, 103 Cal. 474, [37 Pac. 374].)

In the former case the supreme court said: "It is the duty of a railroad company to stop its train at a station for a reasonable time, in order that passengers may get on and off its cars with safety to themselves, and if it fails so to do, and injury results to passengers from the starting of the train while passengers are alighting, the company is guilty of negligence, and is responsible in damages for such injury. A common carrier of passengers for hire is bound to use the greatest care and diligence in their transportation consistent with the carrying on of his business. The act of a passenger in jumping from a moving train is not negligence *per se*, but it is for the jury to say under all of the circumstances of the case whether the act of jumping was justifiable or not; and if the passenger jumped when carried less than one hundred feet beyond the station after an attempt to alight at the station, where there was no sufficient time to alight with safety and there is no evidence as to the speed of the train at the time of jumping, it is proper to instruct the jury that if they find that the train did not stop a rea-

sonable length of time to allow the plaintiff to get off, and that she jumped therefrom while the train was in motion, and under such circumstances that an ordinarily cautious, careful, and prudent person would not have apprehended danger therefrom, she was entitled to recover; but if they found that the jumping was under circumstances where such a person would have apprehended danger, it was an act of carelessness which would relieve the defendant from responsibility, and entitle it to a verdict.''

In the latter case the rule was stated substantially thus: ''It is the duty of a railroad corporation to afford a reasonable time for passengers to alight from its cars at the station to which it has assumed to carry them, and if a passenger is injured while attempting to alight at such station, by reason of the sudden and unannounced starting of the train, the burden is thrown upon the company of showing that the injury was not the result of its own act or negligence. . . . Where it appears that when the train reached the station it stopped a short distance beyond the platform, and that while the plaintiff was in the act of alighting, and when he had reached the lower step of the car, the train started without any warning, throwing plaintiff to the ground, which caused the injuries for which the action was brought, the facts do not prove contributory negligence *per se,* but the question of the plaintiff's negligence should be submitted to the jury.''

These are plain statements of a simple rule of law. It is not necessary to analyze the facts out of which they arose in order to understand them. In the Raub case the plaintiff was shown to have jumped from the train while it was moving; but no real distinction is made in the application of the rule between jumping from a moving train and stepping therefrom. The rule applies to both sets of facts. That these questions are questions of fact is not only the settled rule in California, but while particular circumstances may, in some cases, justify the court in declaring as a matter of law that a passenger is negligent in alighting from a moving train, the general rule is that whether or not alighting from a train when it is in motion constitutes contributory negligence is a question of fact for the jury to determine in view of all of the circumstances of the particular

case. (See note to *Hoylman* v. *Kanawha & M. Ry. Co.*, 22 L. R. A. (N. S.) 741.)

Here there are no particular circumstances which take the case out of the general rule, and the trial court properly left the question of negligence and contributory negligence to the jury.

The appellants rely upon three cases which they claim are in conflict with the two cases last above cited. These cases are *Campbell* v. *Los Angeles Ry. Co.*, 135 Cal. 137, [67 Pac. 50]; *Craven* v. *Central Pacific R. R. Co.*, 72 Cal. 345, [13 Pac. 878]; *Joyce* v. *Los Angeles Ry. Co.*, 147 Cal. 274, [82 Pac. 204].

Campbell's case was a clear case of due care on the part of the carrier, a street-car company, and of negligence on the part of the plaintiff. The plaintiff asked the conductor to stop the car so that he might alight. The conductor did not hear his first request. He repeated it and the conductor then heard it and took steps to stop the car, at the same time admonishing him not to alight until the car had stopped. The passenger did leave the car before it stopped and, in doing so, was injured. The court found that the plaintiff was negligent in so doing, and that his negligence was the sole cause of the injury. It will be noted that the court found from the facts of the case that the sole cause of the injury was the negligence of the plaintiff. The defendant's employee was doing all he could to comply with the request that the car be stopped. In defiance of the warning not to do so, and when he had no excuse, as his request to stop was being complied with, he stepped open-eyed into the danger by which he was injured.

In the case of Mrs. Craven the court stated the problem thus: "The whole evidence revolved around this one question, Did the plaintiff, *at the very time of the accident, negligently* jump off the train while it was moving, and thus cause or contribute to the injury? If she did not, then the verdict should have been for plaintiffs. If she did, then there can be no doubt that her negligence contributed *proximately* to the injury." It will be noted that in stating the problem the court incorporated the idea of negligence in jumping off the train while it was moving, thus importing that it might be possible to get off a moving train without negligence. The jury found a verdict for the defendant in that

case upon conflicting evidence as to whether, after the train had stopped, it was started carelessly and suddenly without giving Mrs. Craven a reasonable chance to alight, thus causing her to fall, or whether she jumped from the train while it was in motion and thus caused or contributed to her own injury. The trial court refused to grant a new trial and the supreme court sustained this order. There is nothing in the case supporting counsel's contention that jumping from a train or getting off a train while in motion is, in and of itself, conclusively negligent. Indeed, in that very case the supreme court approved an instruction reading that "If you believe the defendant did not afford the plaintiff Mrs. Craven a reasonable time for this purpose, but started the train suddenly, while she was in the act of getting off the car and before she had time to alight, it failed to perform its duty, was guilty of negligence, and is liable to her for damages she has suffered thereby," given in connection with another instruction to the effect that if the negligence of the plaintiff caused or contributed to her injury, she was not entitled to recover.

In *Joyce* v. *Los Angeles Ry. Co.*, 147 Cal. 274, [82 Pac. 204], the plaintiff asked the conductor to stop at Hewitt Street and he told her that he would do so and that Hewitt Street was three blocks farther on. While the conductor was on the street in front of the car, according to custom, signaling the car on its crossing a steam railroad track, the plaintiff, without notice to or knowledge of either conductor or motorman that she intended to leave the car, alighted therefrom two blocks before reaching Hewitt Street and on the wrong side, and in consequence thereof was injured. She was warned by one of the passengers not to get off the car as it was in motion. She had no reasonable excuse for leaving the car. The jury found against her and the supreme court held that this finding was sustained by the evidence. In both this case and Campbell's case the car was not yet stopped and in each of these cases the official of the car had been asked to stop it at a certain point by the passenger who was injured, and the passenger left the car while in motion and before the motorman had an opportunity to comply with the request to stop the car. In each case it was held that the carrier was not negligent. It is true that the court employed some general language in both the Joyce case and

Campbell case which seems to be, on first reading and if construed without reference to the facts to which the court was applying it, in conflict with the rule as laid down in the case of *Carr* v. *Eel River etc. R. Co.*, and Raub's case. This language is all embodied in the Joyce case and the gist of it is embraced in the following quotations: "It is said in Booth on Street Railway Law (section 337) : 'But it has been held to be negligence *per se*, which justifies a nonsuit, to step off the car while it is being slowed up in order to stop in response to a passenger's request or when encumbered by a load or bundle'" and further: "It is said in Schouler on Bailments and Carriers (third edition, section 662) : 'Thus a railway passenger is not justified in jumping from the train while it is in motion, even though the carrier was negligent, whether in carrying him past the station or in starting before he had due opportunity to land.'" The language quoted is not, however, necessarily in conflict with the rule that the question whether a passenger leaving a moving train is guilty of contributory negligence is in this state a question for the jury. The most that can be said is that it was held to be negligence *per se* to leave a rapidly moving car while it was being slowed up in response to a passenger's request, and that the quotation from Schouler is no more than a statement of what has been held in some cases to be the law, quoted by way of argument to show how far some authorities have gone, and was not intended to lay down a rigid rule to the effect that getting off a moving train or car is in itself conclusively a negligent act.

These cases are thus seen to be reconcilable with *Carr* v. *Eel River etc. R. Co.*, and the Raub case, *supra*, which are therefore held to state the rule in California. In all the cases cited by appellant on this point the carrier was either found to have been guiltless of negligence or particular facts sustained a finding that under all the circumstances plaintiff was negligent in getting off the moving train. It is nowhere held that leaving a moving train constitutes negligence *per se*, and the cases cited by defendant in support of the contention are all thus seen to be either causes which particular facts took out of the general rule, or where the court found "negligence" in getting off the train while it was in motion, which upon all the facts is tantamount to a finding of contributory negligence. In this case it does not appear

as a matter of law under all the circumstances that plaintiff was negligent in alighting from this train. The question was properly left to the jury for decision.

It is claimed that the damages awarded by the jury were excessive. The verdict was for five thousand dollars. As a result of her fall the plaintiff, who prior thereto was an able-bodied woman performing the housework for a family, was rendered helpless, requiring the constant assistance of others. She was in a hospital for a long time and suffered great pain from the injury. The trial occurred over two and one-half years after the injury, and during all the time between the injury and the trial the plaintiff was in constant pain. She was unable to walk except with crutches at the time of the trial. Her broken hip had not united, and to all appearances her condition will be permanent. Her hospital bills and the services of one among several doctors whose services were necessary cost her $527. We cannot say under these circumstances that the amount of damages awarded by the jury was excessive.

Many complaints were made of instructions given by the court and of the refusal to give instructions requested by the defendant; but an examination of the instructions as a whole discloses no reason for a reversal of this case. Without reciting the various instructions, it may be said that of those given by the court number 5 was copied substantially from *Carr* v. *Eel River etc. R. Co.*, 98 Cal. 366, [21 L. R. A. 354, 33 Pac. 213], and correctly stated the law; numbers 8 and 9 were based upon the theory that Miss Fitzgerald was thrown from the car, and while perhaps not applicable in this case, nevertheless could not have misled the jury, as the evidence on that point was perfectly clear; numbers 10 and 11 correctly stated the law; and number 12 was generously fair to the defendant. Number 16, which is criticised because of its assumption that the plaintiff's nervous system was shocked by her injury, is not objectionable on this score, because the evidence beyond question shows that her nervous system was shocked and injured.

The instructions requested by defendant were correctly modified by the court and those refused were properly refused; for example, as originally presented, defendant's requested instruction number 5 directed the jury to find a verdict for the defendant if Miss Fitzgerald was injured in any

other way than by being violently thrown from the train, thus excluding every other cause of injury, and it was for this reason incorrect. The court modified it properly so as to include the other theories upon which the case was tried. Defendant's instruction number 12 was a lengthy, involved, and argumentative instruction calculated not intentionally but in fact to mislead the jury and was properly modified so as to, in a measure, remove these objectionable features. Defendant's instruction number 13, as presented by the defendant, undertook to state to the jury that if they believed Miss Fitzgerald's testimony that she was injured in consequence of voluntarily alighting from the train while it was moving, they must bring in a verdict in favor of the defendant, thus holding her guilty of contributory negligence, whereas, as a matter of law, as we have seen, the question of contributory negligence was one for the jury to decide.

The criticism of other instructions is not sufficiently important to require mention.

Judgment affirmed.

Kerrigan, J., and Zook, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1918.